IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISRTICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2006 MAR -6 A 10: 07

| | |
|---|---|
| MICHAEL LEWIS WILEY,<br>Plaintiff,<br><br>v.<br><br>LAMAR GLOVER, et al.<br>Defendants. | )<br>)<br>)  CIVIL ACTION NO.:1:05-cv-1156-F<br>)<br>)<br>)<br>) |

## AFFIDAVIT

**COMES NOW**, Michael Lewis Wiley, Plaintiff, being first sworn, duly depose and state that the following is true, correct, and complete to the best of my knowledge and deeply held spiritual convictions by God Almighty to wit:

1. THAT as to Statement 1 of the Defendant's Special Report, Plaintiff states that the defendants were with knowledge as to to the averments in Plaintiff's complaint because I on several occassions verbaly as well as through the use of the greivance forms supplied by the jail as to the constitutional violations against me.

2. THAT as to Statement 2 of the Defendant's Special Report, (see above statement).

3. THAT as to Statement 3 of the Defendant's Special Report, I assart that the defendants did knowingly and willfully violate my I, V, and XIV Amendment rights.

4. THAT as to the Statement 4 of Defendant's Special Report, I assert that my constitutional rights were violated everyday for a period of 120 days.

5. THAT as to Statement 5 of the Defendant's Special Report, I assert that while incarcerated in Houston County Jail, there were V and XIV Amendment violations arising out of the act of

Plaintiff exercising his I Amend. right to practice freedom of religion. I am an Orthodox Jew.

6. THAT as to Statement 6 of the Defendant's Special Report, I state that I am entitled to relief because of the deprivation of my rights protected by the constitution of the United States and as this Affidavit will now state the grounds and details of the violations of the rights of the Plaintiff.

On or around September 29, 2005 I was transported and "booked" into the Houston County Jail to stand trial. As I was being booked into the system the correctional officer on duty in dockett asked me if I had any specific diet. I said that I am a Hebrew Israelite and that i only eat kosher foods. the C/O, not being familiar with the term "kosher", interpreted it to mean "vegitarian," which it does not. the c/o then asked me how long my hair was. I stated that it was more than one inch off of my scalp. The C/O then stated that "If you dont cut your hair then they [the jail staff] are going to make you cut it. They are going to put you on 'lock down'." I then stated that it was against my religious beliefs to cut my hair according to Numbers chapter 6 verse 5, and that I was not afraid of lockdown.

I never recieved or refused any rules or regulations of the jail as Commander **William McCarty** states that I did in his affidavit. The Court will notice the absense of my signatureand or any documentation of any refusal to accept a copy of the inmate rules according to the defendant **William McCarty** and policy # E-302 of the Houston County Jail Policy and Procedure. (see attachment labled 'Exibit A')

After a period of 72 hours I was approached by defendant **Pamela Miller** because i had not cut my hair. She then asked me if I was ready to cut it yet. I told her "No" and that i had no intention of cutting it because (1) "I am a federal inmate not convicted of the state and (2) it is against my religion." **Miller** then responded "Well you're in temporary custody of the Houston

2

County Sheriff's Department and we can do whatever we want to with you." I stated "This is religious disrimination." **Miller** denied the accusationand said that i was going to be placed in segregation until i cut my hair. (see Exibit A) [**People ex rel. Rockey v. Krueger, 306 N.Y.S. 2d 359 (Sup. Ct. 1969)** Jail held prisoner in solitary confinement because he refused to shave his beard. The prison admin. justified the regulation as one for the protection of health. The Court held that on the basis of the treatment afforded Orthodox Jews, the prisoner was the subject of religious discrimination.]

I hereby state that I am a Hebrew Israelite, an Orthodox Jew and that i do not cut my hair based on the Biblical vow of the Nazarite (Numbers 6:1-6). [**Benjamin v. Coughlin 708 F.Supp 570 (SD NY 1989), 905 F2d 571 (2d Cir. 1990) 498 U.S. 951 (1990).** Inmates required to cut their hair for mug shot. Rastafarian inmates, who were required to cut their dreadlocks, successfully raised first Amendment claim. The regulation requiring inmates to cut their hair was held unconstitutional as applied.]

Upon being placed in segregation my sleeping mat and bedding was taken away as well as my legal papers, writing utencils, commisary, telephone rights, and visitation. From the initial violation of my I Amendment right to Freedom of Religion, stemed violations of my V and XIV Amendment rights of due process of law. [**Clevland v. Garner 69F.3d 22 (5th Cir 1995)** A prisoner alleged that the prison's grooming regulations interfered with free exercise of his religion in violation of both I Amendment and the **Religious Freedom Restoration Act (RFRA) of 1993. 42 USC § 2000 bb-1 (b)**].

Plaintiff also alleges the violation of not only his I Amend. rights but alos his V and XIV Amendment rights as well.

Since I had not yet been (or would I have been) convited of any crimes by the state and was not therefore "property of the state" and therefore a pretrial detainee. USCS V Amendmemt-

3

Pretrial Detention- "unlike convicted inmates, pretrial detainees cannot be punished since due process clause forbids it [**Green v. Baron (1989, CA8 Iowa) 879 F.2d 305**]."

UCSC V Amendment not 801 Due Process of the V amendment protects pretrial detainees from punishment or jail conditions which amount to punishment, and if restriction or condition is not reasonably related to legitimate goal of custodian to maintain security in the institution, court can permissibly infer that the purpose of government action is punishment that may not constitutionally be inflicted upon detainees as detainees. [**Malone v. Colyer (1983 CA6 Tenn) 710 F 2d 258**].

I was Denied access to the courts as my legal documents were withheld from me until my hour out of my cell. In that hour I was to shower, clean my cell, and look over my paperwork if there was any time left.

Defendant **Pamela Miller**, stated in her affidavit that inmates in segregation were given pencils on a weekly basis. That was a lie. We recieved soap, toothpaste, toothbrush, toilet paper, 2 sheets of writing paper and 2 envelopes a week. Never once were we given pencils in the entire time of my incarceration in the Houston County Jail. I was denied the opportunity to work on my case by the Defendants. [**US ex rel. Mayberry v. Prasse 225 F.Supp 752 (E.D. Pa. 1963)** The Court found that the right of access to the courts included "the right of a prisoner to prepare, serve and file legal documents and prosecute legal actions affecting his personal liberty." The United States Supreme Court has repeatedly affirmed that one of the fundamental rights within the due process clause of the XIV amendment is the right of access to the courts.]

Both Defendants **McCarty and Miller** alleged in their Affidavits that I had opportunity to contact his legal cousel. This is another lie. I was denied any and all access to the telephone. Family, counsel or otherwise. Throughout my entire incarceration

in the Houston County Jail I never once was allowed to contact cousel via telephone. Jail phone records will prove this.

Courts have determined that there is no legitimate governmetal purpose to be achieved by not allowing access to the telephone, and such is protected by the I amendment. **[Johnson v. Galli, 596 F.Supp 135 (D.Nev. 1984)].** I also assert that due to commissary restrictions I was denied the right to purchase stationary and stamps for an entire month.

As stated in defendant **Miller's** Affidavit my matress and bedding were taken from me everyday. My back and kidneys ached constantly. I made reports about my pain and was denied medical treatment by staff and was ignored by medical staff. (see Exibit B). There are records of request forms at the jail. **[Thompson v. City of L.A. 885 F.2d 1439, 1448 (9th Cir 1989)** County jail's failure to provide detainee with bed or matress violated due process.

I was mentally and emotionally punished as well. I was locked in that cell for 120 days without any sort of mental stimulation. the physical pain was so harsh I could not sleep sometimes. I was facing 20 years (which I eventualy got as a result of my restrictions from the courts) without access to call my family or attorney. I also had a family member die on November 11, 2005 and was denied a phone call then also. I was not able to think clearly or make rational decisions at the time I was sentenced to 20 years.

I was originaly serving time in Federal Correctional Institution Manchester Kentucky, so going back to Houston County was the closest I had been to my home since the year 2003. It hurt me emotionally when I was denied visitation with my family because of the practice of my religious customs. My family is not rich and cannot afford to come visit me in Kentucky.

   Defendant **McCarty** justifies forcing inmates to cut their hair on the basis of health. but while in segregation there were other inmates that had to go back to population that were placed in the cell with me for days at a time, thereby rendering the explaination of "health issues" irrelevant. Also the women inmate population was permitted to wear their hair shoulder length.

   On the issue of the food service situation defendant **Carolyn Jackson**, who is in charge of the Food Service Program did intentionally under nurish me during my incarceration by feeding me one (1) slice of cheese in place of a meat, thus greatly decreasing the 3000 calorie a day diet that was approved by the dietition. Defendant **Jackson** also states in here Affidavit that "The Plaintiff requested food without pork or beef. The Plaintiff's request was noted and implemented." What she fails to state is that it took nearly 2 months for food service to implement the diet after much intentional malnurishment. I arrived at the jail on September 29, 2005 and made the request on Oct. 3, 2005 but didnt recieve the tray for another 2 months. Until then she would take the meat off of the tray and would offer no substitution in its place. I would sometimes send my tray back to the kitchen asking for the tray i had requested. **Jackson** said that she had "personally sent messages to the plaintiff." Often times those messages would be in the form of "if you dont like it then you can throw it away."

   On one instance I was served 4 slices of canned peaches, 1 portion of coleslaw, 1 piece of cornbread, and 2 slices of cheese. In another intance when other inmates were being served turkey dogs, I recieved none. I sent my tray back to the kitchen to have turkey dogs placed on it. **Jackson** sent the tray back to me with nothing on it but green beans and bread and told the correctional officer that brought it back to me (C/O Joann Williams) to tell me that she said "if you dont like it then you can throw it away."

   When i first got to the jail I weighed 202 lbs. and within 30 days I was down to 193 lbs. Defendant **Speigner** chose not to include that in her Affidavit.

6

(-cont.-)

The Medical staff fails to make accurate body weight measurements.

On one such occassion I was weighed with additional clothing items on my person. After a subordinate of defendant **Speigner** weighed me I asked her, "Are you going to record that or are you going to take an accurate measurement?" The nurse replied "Well maybe I'll just strip your ass naked next time." Medical staff was constanly neglecting the seriousness of their duties. (see Exibit B)

On yet another occassion I informed a nurse (Nurse Saleena Jones, a nurse who no longer works at the jail do to her having sexual relations with an inmate) that I had lost 10 lbs. in a 30 day period. She said "Thats good, I wish I could lose 10 pounds." I told her that this was a serious matter, that I felt fiant, and that she was not running a "fat camp."

On several other occassions I blacked out due to lack of nurishment. these instances were also reported to medical. Medical said they would take a picture of my tray. The day she took a picture of my tray I recieved a tray with more food on it than i had recieved on trays prior to the picture. Food Service and medical conspired to give me larger portions for the sake of the picture taken by medical for the protection against civil action later brought by the plaintiff.

JURAT

Stated under Penalty of Perjury.

Dated this 1 day of March 2006.

*Michael Wiley*
MICHAEL LEWIS WILEY
Plaintiff

CERTIFIED OF SERVICE

Date: March 1, 2006

RE: CIVIL ACTION NO.:1:05-cv-1156-F


    I, MICHAEL LEWIS WILEY, Plaintiff in the above mentioned case, hereby certify that a copy of the Plaintiff's Affidavit in response to the defendant's Special Report has been sent to the defendant's counsel at SHERRER, JONES & TERRY, P.C. 335 West Main Street P.O.Box 805 Dothan Alabama 36302 via the United States Postal Service, certified prepaid postage on this 1 day of March 2006.

*Michael Wiley*
MICHAEL LEWIS WILEY