IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL LEWIS WILEY )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 1:05-CV-1156-MEF
 )
LAMAR GLOVER, et al., )
 )
    Defendants. )

## PLAINTIFF'S AFFIDAVIT IN RESPONSE

    That I, Michael Wiley, plaintiff in the above styled cause, being first duly sworn, deposes and says the following:

    In response to the affidavit submitted by the defendant **William B. McCarty** on December 14, 2006, I, the plaintiff, state that the statements made by McCarty in his supplemental affidavit still fail to address the claims and issues raised in my supplement.

    The defendant's statements are based on policy rather than to the events that occured. he has no first hand knowledge of the violations against me.

    The defendant stated that at no time was I placed in segregation because of my religious beliefs and that I was placed in segregation because of my refusal to cut my hair. That is a direct contradiction to the former statement because it is my religious custom to keep my hair. He also failed to state the routin disciplinary action and punishment for the simple act of refusing a direct order if that was indeed the reason for placing me in segregation on **indefinite lockdown**. The record provides no support for that claim.

    My placement in segregation violated my due process rights. Correctional Officer Tracy Walker was the person in charge of conducting disciplinary hearings. Disciplinary hearings that were not conducted on my behalf. I had a liberty interest in avoiding administrative segregation. I was not afforded due process. Such deprivation imposed atypical and significant hardship on me in relation to ordinary incidents of prison life.

    He also stated that "the plaintiff did, in fact appeal many of

his disciplinaries", and that I "was well versed in the filing of grievances and inmate request forms." The defendant openly admits to these documents (especialy disciplinary appeals and request forms) as being in the records at his disposal and yet not copies of any request forms or disciplinary appeals, especialy the appeal of the initial sanction, appeared in the discovery information provided by the defendants. The defendants have been misleading in their statements that the 58 page discovery packet that they submitted was all the information they had in their possession regarding my inmate file. I am still waiting for such information to be submitted.

The Houston County staff were informed of my religious status upon my arrival at the jail receiving and discharge (R&D). The issue about my religious customs and the conflict therein was thoroughly discussed with an officer in R&D before I was ever brought to general population. I gave verbal notice once more to defendant **Miller** when she came to place me in segregation after my first 72 hours. I gave notice once again to defendant McCarty through the use of my appeal the day after my transfer to segregation. Defendant McCarty failed to submit **any** appeals or requests made by myself.

Defendant McCarty also stated that "Indigent inmates are provided two **stamps**, two **envelopes**, and two **sheets of paper** on Wednesday of every week." Unlimited postage was also made available to the inmates for Court matters. Once again the defendants statements are based on policy alone as evidenced in his **Exibit I** and no first hand knowledge of the situation by McCarty is displayed there. The utilization of stamps, envelopes, and paper is an impossibility without the issuance of writing utencils. As I said in my first affidavit it was necessary for me to sneak writing utencils into my cell through the help of other inmates. My writing utencils were often confiscated upon routine shake downs conducted by staff on one of the three shifts. I was often times disciplined for possessing writing utencils.

Once again there is evidence of defendant McCarty's lack of personal knowledge lack of the situation in that I was not indigent. I was just not allowed to spend any money on the commisary for my first 21 days in the jail. Meaning that I could not purchase

stationary or mailing stamps, A right that I had to argue to several jail officials so that I could take advantage of the commisary even though I was only permitted to purchase stationary and hygiene products, though the pens I purchased were often taken from me on second and third shifts

---

Let the record reflect that the affidavit submitted by the Chaplain, **David Baker**, failed to address the claims raised in the above styled cause.

Upon my admission to the jail and also upon my transfer to segregation I requested audience with the chaplain in regards to my religious creed and customs. After a few weeks of being segregation the chaplain finaly came to give the audience I had requested. I told the chaplain my religious customs. I gave him an address in which he could have contacted another chaplain so that he may obtain information on my practices. The chaplain never contacted anyone I suggested. he didnt even bother to write down the address. I told the chaplain my religion, a few particulars and that was the last time he spoke with me.

The chaplain stated that he contacted members of the Jewish Clergy on the issue of conducting religious services for inmates in the jail. The issue is about my right to practice my fundamental rights, not whether or not I was receiving religious services in the jail. Secondly the chaplain never contacted a Hebrew Israelite community authority, but contacted a Jewish clergy instead as supported by his affidavit. It is impossible to see how he addressed or protected my fundamental right to practice my religion.

The chaplain makes assertions that I was not denied free access or the freedom to practice my religious beliefs except in the light of legitimate penological interests. He failed to state the "legitimte penological interests" and he failed to address the actual reason I was placed in segregation.

My religion was never taken seriously because:
a. after declaring my faith and customs the Chaplain was never called upon to address the situation within the first 72 hours as requested.

Page 3 of

b. 21 days had elapsed along with several unacknowledged requests before I was permitted to speak with the chaplain who promised to look into the matter but did nothing to attain a resolve.
c. The chaplain's inquiry to the Jewish clergy was geared towards the provision of religious services to inmates in the jail, not towards the practice of religious customs.
d. No effort was made to accomodate my Hebrew Israelite religion, dietary or otherwise.

It is not right that I was taken out of an environment where my right to practice my religion is protected and be placed into an environment where my rights are stripped away.

_____ _CSW 1-8-07_
NAME              TITLE
"Authorized by the Act of July 27, 1955,
as amended, to administer oaths
(18 USC 4004)."

_____
MICHAEL WILEY

## CERTIFICATE OF SERVICE

I, MICHAEL WILEY, hereby certify that the documents labeled **Plaintiff's Response** has been sent to the defendants at the address: **SHERRER JONES & TERRY 335 West Main Street, Dothan Alabama, 36301** via the United States Postal Service on this the 9th Day of January, 2007.

*[signature]*
MICHAEL WILEY